UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RALPH LAUREN CORPORATION,

Plaintiff,

-against-

UNITED STATES POLO ASSOCIATION,
INC., USPA PROPERTIES, INC. and
ARVIND LTD., formerly named ARVIND
MILLS LIMITED,

Defendants.

Civil Action No. _____

## COMPLAINT

Plaintiff, Ralph Lauren Corporation ("RLC"), by its undersigned counsel, for its Complaint against Defendants United States Polo Association, Inc. ("USPA"), USPA Properties, Inc. ("USPA Properties") (collectively "USPA Parties") and Arvind Ltd., formerly named Arvind Mills Limited ("Arvind") (collectively, "Defendants"), alleges as follows:

### THE PARTIES

1.      RLC is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 650 Madison Avenue, New York, New York 10022.

2.      Defendant USPA is a not-for-profit corporation incorporated in Illinois, which purports to be the governing body for the sport of polo in the United States.

3.      Defendant USPA Properties is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business at 771 Corporate Drive, Suite 430, Lexington, Kentucky 40503.  USPA Properties acts as the licensing arm of USPA and is engaged in licensing USPA's branded products, both domestically and abroad.

4.    Defendant Arvind is a public limited company organized and existing under the laws of India, with its principal place of business in Bangalore, India.  Upon information and belief, Arvind is engaged, among other things, in the manufacture and sale of textiles and finished garments worldwide, including the exportation and sale of such goods to and for the benefit of companies in the United States, including, in particular, noted fashion firms, headquartered in New York City, such as Brooks Brothers, Tommy Hilfiger, and Calvin Klein.

## JURISDICTION AND VENUE

5.    This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and countries, and the amount in controversy exceeds the value of $75,000.00.

6.    Venue is properly laid in this Court pursuant to 28 U.S.C. § 1391(b)(2) and (b)(3).

7.    The USPA Parties conduct business within this judicial district, including the operation of a retail store in the district and sale of merchandise in this district.

8.    Upon information and belief, Arvind regularly transacts business and supplies goods or services within this state and judicial district and derives substantial revenue from goods and services rendered in international commerce and in this state and district.

9.    Upon information and belief, Defendants have committed tortious acts causing injury to Plaintiff within the state and judicial district.  Defendants have also committed purposeful acts and transactions in the State of New York.

10.    Upon information and belief, Arvind routinely sends its officers, directors, and supervisory employees to conduct business here.  Defendant Arvind has also sold and offered products or services for sale, and has advertised and marketed its products and services to purchasers found in this district.

11.     Arvind and the other Defendants are parties to a Settlement Agreement dated Sept. 5, 2003 ("Settlement Agreement") via which Arvind and the other Defendants have agreed that the United States District Court for the Southern District of New York maintains jurisdiction over said Defendants to confirm and enforce any arbitration award issued against Defendants. The claims alleged herein arise, in part, out of the fraudulent acts of Defendants committed in connection with, and in breach of, said Settlement Agreement. Thus, personal jurisdiction over Defendants in the State of New York, exists and venue is proper in this Court pursuant to 28 U.S.C. § 1391 and N.Y. C.P.L.R. § 302(a).

## CURRENT CONTROVERSY

12.     RLC finds itself the target of a fraudulently-conceived international shell game perpetrated by the USPA Parties and Arvind.

13.     In 2003, following a dispute over USPA's infringement of RLC's famous Polo Player Mark, RLC's wholly owned subsidiaries and the USPA Parties executed a Settlement Agreement in order to resolve disputes regarding the use by the USPA Parties of certain names, logos, and trademarks in connection with the production and sale of apparel and other specified categories (collectively, the "Settlement Marks"). The Settlement Agreement provided, among other things, that the USPA Parties and their master licensees in various international locations, which consented in writing to be bound by the Settlement Agreement, would be permitted to use specified Settlement Marks on apparel and other specified categories provided, *inter alia*, (1) that a prominent disclaimer was always displayed on such goods showing said Settlement Marks and (2) there was adherence to all other restrictions specified in the Settlement Agreement with respect to the manner in which such goods showing the Settlement Marks were promoted, advertised, and sold. The Settlement Agreement also set out arbitration procedures for resolving

3

disputes arising thereunder. The USPA Parties were further obligated to incorporate the terms of the Settlement Agreement in each of their license agreements, and to cause all their international licensees to execute a written consent to be bound by the Settlement Agreement, and to deliver said consents to RLC.

14.     Arvind is the master licensee of the USPA Parties for the sale of USPA branded apparel and other products, including those bearing the Settlement Marks, in India.

15.     On September 1, 2007 Arvind executed a Consent to Settlement Agreement binding itself to the terms of the Settlement Agreement, which is binding upon and inures to the benefit of Arvind, and all of its successors and assigns, and via which it represented it has the authority to execute on behalf of its predecessors, successors and assigns "heretofore and hereafter."

16.     Upon learning of flagrant violations of the Settlement Agreement in India by Arvind, RLC notified the USPA Parties and Arvind of said violations in the manner required by the Settlement Agreement. RLC thereafter conferred with the USPA Parties and their counsel in New York  in an effort to resolve the dispute. USPA's attorneys purported to act for both the USPA Parties and Arvind throughout the course of these communications. As the dispute was not resolved, RLC initiated arbitration against Defendants in accordance with the Settlement Agreement on July 31, 2013, under the auspices of the American Arbitration Association's International Center for Dispute Resolution ("ICDR"). The Settlement Agreement provided that the arbitration should be held in the location where USPA's foreign licensee had its primary place of business. Accordingly, the ICDR selected Bangalore and the site of the arbitration.

17.     Thereafter, and in contravention of the Settlement Agreement, Arvind commenced a suit against RLC in a city court in Bangalore, India, seeking a declaration that the

Settlement Agreement is null and void and that Arvind is not bound (the "City Court Action"). RLC has not appeared in the City Court Action. Nonetheless, Arvind sought and obtained an injunction in the City Court Action staying the ICDR proceeding RLC filed against Arvind.

18.     Arvind also has advised the ICDR that Arvind is not a party to the Settlement Agreement and has no obligation to submit to arbitration. Among other things, Arvind asserts that in 2009 it "demerged," thereby discharging all its liabilities and contractual obligations to RLC. Neither Arvind nor the USPA Parties ever notified RLC that Arvind "demerged," and instead made affirmative misrepresentations to RLC and its counsel which deliberately led RLC to reasonably believe that Arvind was complying with its obligations under the Settlement Agreement and was entitled to the benefits. Arvind also contends for the first time that material provisions of the Settlement Agreement were and are contrary to Indian law, and that the Settlement Agreement is therefore unenforceable against Arvind or any other Arvind entity.

19.     The USPA Parties have also breached the Settlement Agreement by contending that the Settlement Agreement is unenforceable.

20.     In short, as a result of the aforesaid actions by Defendants, RLC has been denied both its remedies available under the Settlement Agreement for Defendants' flagrant breaches thereof, and the benefit of its bargain with the USPA Parties and Arvind under the Settlement Agreement.

## BACKGROUND

### The Ralph Lauren Corporation Marks

21.     In the 1960s, Mr. Ralph Lauren started a retail business, which after various name changes, is known today as the Ralph Lauren Corporation. Through the businesses he built and

oversees, Mr. Lauren created a lifestyle brand built around the POLO mark and the now iconic

POLO PLAYER Logo shown below (collectively, the "RLC Marks").



22.     Beginning as early as 1980, RLC and its wholly-owned subsidiary companies

have continuously used the RLC Marks in connection with the promotion, advertising and sale of

a variety of goods and services throughout the world.  RLC, and subsidiaries under its operation

and control, own trademark registrations for the RLC Marks in the U.S. and around the world,

including in the United States and in India.

23.     The RLC Marks symbolize to the trade and consuming public the inestimable

goodwill attributable to the creative genius of Mr. Lauren and the image he carefully crafted and

cultivated in connection with the products sold under the RLC Marks worldwide.  By way of

example, on November 16, 2012, in recognition of their international renown, the Office of the

Controller General of Patents Designs and Trademarks in India added RLC's POLO mark and

POLO PLAYER Logo to the list of well-known trademarks pursuant to Section 11(8) of the

Indian Trademarks Act 1999.


**Prior Litigation Between RLC and USPA Parties**

24.     The USPA Parties conduct a licensing business including the use of many

trademarks, logos and packaging, many of which have been repeatedly found by this Court to

have violated RLC's trademark rights.

The 1984 Litigation

25.    In 1984, in *U.S. Polo Ass'n, Inc. v. Polo Fashions, Inc.*, No. 84 Civ. 1142, 1984 WL 1309 (S.D.N.Y. Dec. 6, 1984), USPA and its licensees brought a declaratory judgment action against RLC's wholly-owned subsidiary that owns the rights to the RLC Marks in the U.S., PRL Holdings, Inc. ("PRL"), claiming the USPA Parties were entitled, among other things, to use a mounted polo player logo as a trademark for apparel and other goods and services. PRL counterclaimed for trademark infringement.

26.    By order dated December 6, 1984 (the "1984 Order"), Judge Sand denied USPA's request for a declaration of non-infringement and found that USPA was using a polo player logo on merchandise, hang tags, and packaging, in a manner that infringed PRL's trademarks, (collectively, the "Polo Marks") for apparel. A true and correct copy of the 1984 Order is attached here to as Exhibit 1.

27.    The 1984 Order included a broad injunction that permanently enjoined the USPA Parties and those actions under their control, including licensees, from, among other things:

- using any of the Polo Marks or any name or mark or symbol which is confusingly similar thereto, in connection with the sale or offering for sale of any goods or the rendering of any services;
- manufacturing, distributing, advertising, promoting, importing, licensing, authorizing, sponsoring, holding for sale or selling any goods, labels, tags, logos, decals, emblems, signs and other forms of markings, any packaging, wrappers, containers and receptacles and any jacquard cards, catalogs, price lists, promotional materials and the like bearing an infringement or colorable imitation of any of the Polo Marks;
- using for any commercial purposes whatsoever any symbol, logo, trade name or trademark which may be calculated to or has the effect of falsely representing that the services or products of or licensed by plaintiffs are sponsored or authorized by, or in any was associated with defendants, Ralph Lauren or any entity affiliated with any of them; and
- using for any commercial purposes whatsoever, the name "United States Polo Association," or any other name which emphasizes the

word POLO (or the words U.S. POLO) separate, apart and distinct from such name in a manner which is likely to cause confusion with defendants, Ralph Lauren or any entity affiliated with any of them.

The Apparel Litigation

28.     In July 2000, PRL brought an action in the Southern District of New York against USPA and their domestic licensees alleging that the sale of apparel and related products displaying certain USPA marks and logos infringed the RLC Marks (the "Apparel Action").

29.     On September 5, 2003, PRL and the Polo/Lauren Company, L.P., RLC's wholly owned subsidiary (collectively, "PRL Settlement Parties"), the USPA Parties and USPA's domestic licensees, Jordache, Ltd., and L.V. Enterprises, entered into the Settlement Agreement, which sought to resolve on a global basis certain disputes arising out of the use by the USPA Parties of the Settlement Marks.

30.     RLC is the parent company of the PRL Settlement Parties.

31.     The Settlement Agreement was executed before a judgment was rendered by Judge Daniels in the Apparel Action and settled some of the claims at issue in the Apparel Action.  The Settlement Agreement provided that the USPA Parties' rights to use four specific iterations of USPA's double horsemen marks would be determined by the subsequent trial in the Apparel Action, and any versions of the double horsemen marks at issue in the action found not to be infringing would be therefore incorporated into the Settlement Marks.

32.     On October 31, 2005, Judge Daniels entered judgment pursuant to the jury verdict (the "2005 Judgment") in the Apparel Litigation.  A true and correct copy of the 2005 Judgment is attached hereto as Exhibit 2.

33.     The Settlement Agreement provides that the USPA Parties and their consenting licensees were allowed to use specific iterations of the double horseman marks that were not

8

found to be infringing in the United States by virtue of the 2005 Judgment on a worldwide basis.[1] Therefore, specific iterations of the double horsemen marks were included among the Settlement Marks the USPA Parties and their consenting licensees may use pursuant to the Settlement Agreement.

34.     The Settlement Agreement is governed by New York law, and the parties thereto, including USPA's master licensees such as Arvind, agreed to the ongoing jurisdiction of the Southern District of New York as to confirmation and enforcement of any arbitration award issued thereunder.

35.     The Settlement Agreement imposes various restrictions on the promotion and sale of USPA products which bear the Settlement Marks, including a requirement that all such products include the disclaimer stating "Not affiliated with Polo Ralph Lauren Corp." at least as prominently as the specific example set forth in the Settlement Agreement.

36.     Taken together, the Settlement Agreement, the 1984 Order, and the 2005 Judgment govern the limited manner in which the USPA Parties and their master licenses may use USPA's double horsemen marks, and other marks, graphics and logos, on apparel and other specific products.

The 2009 Fragrance Litigation

37.     In November 2009, USPA filed a complaint against PRL seeking a declaratory judgment that, among other things, it had the right to use versions of a double horsemen mark in connection with fragrances.  Fragrance is not a product category included in the Settlement Agreement.

---

[1]      With the exception of certain jurisdictions not covered by the Settlement Agreement, such as Japan and Korea.

38.     On May 13, 2011, following a bench trial, the District Court issued its opinion finding that USPA's use of the confusingly similar double horsemen mark, and composite word marks in which the word POLO predominated, infringed the RLC Marks. *U.S. Polo Ass'n v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515 (S.D.N.Y. 2011). The Court found the RLC Marks were valid and "extremely strong" and thus entitled to a substantial degree of protection from infringement. *Id.* at 527-28. The Court also held that the striking similarities between PRL's Polo Player Logo and USPA's double horsemen marks were "apparent." *Id.* at 528. In particular, the court noted

> Both marks are similar in perspective—containing a polo player on horseback, facing slightly to the viewer's left, leaning forward with a polo mallet raised. Both are monochrome logos that are similar in their level of abstraction. Both are displayed in embossed metallic or glossy material—with PRL's appearing in a number of colors including silver and gold, and USPA's appearing in a light gold.

> The primary difference between the marks is that the PRL's logo contains one player, while USPA's contains two, one with mallet raised and the other with mallet lowered, which significantly overlap. In USPA's mark, the front horseman is displayed in solid metallic ink, while the rear horseman is only outlined, such that the background packaging shows through. This gives the front—mallet raised—horseman more visual prominence, while the torso of the rear horseman can be said to fade into the background. Both of USPA's horsemen share the same directional perspective and overlap to a degree that it can be difficult to discern if there is one horse or two.

*Id.* at 528-29 (citations omitted). The Court also found that USPA acted in bad faith in using the double horsemen mark on fragrances, and that "USPA's use of the Double Horsemen Mark along with the word mark 'U.S. POLO ASSN.' in the context of men's fragrances created a strong likelihood of confusion with the PRL Parties' products." *Id.* at 538.

39.     USPA appealed the May 2011 opinion, which the Second Circuit affirmed in its entirety in February 2013. *U.S. Polo Ass'n v. PRL USA Holdings, Inc.*, No. 12 Civ. 1346, 2013 WL 490796 (2d Cir. Feb. 11, 2013).

40.     The Court entered a Final Judgment and Permanent Injunction on March 5, 2012 (the "2012 Injunction").[2]  Among other things, the 2012 Injunction enjoins and restrains USPA from:

> Using the PRL marks or any other name or mark, including the image of one or more mounted players, that constitutes a colorable imitation of or is confusingly similar to PRL's Polo Player Logo . . . or "POLO" word mark in connection with the sale or offering for sale of any goods or rendering of any services;
>
> Using for any commercial purpose whatsoever any symbol, logo, trade name, trademark, or trade dress which is calculated to or has the effect of representing that the products or services or licensed by the USPA Parties are associated with, sponsored, endorsed, or authorized by, or are in any way connected or associated with the PRL Parties or any entity affiliated with them.

Ex. 4, ¶ 3.

41.     After the entry of the 2012 Injunction, PRL brought a motion for contempt based on USPA's sale of sunglasses and other products bearing colorable imitations of PRL's iconic Polo Player Logo, in violation of the 2012 Injunction and the 1984 Order.  By order dated March 5, 2013, Judge Sweet granted PRL's motion, held USPA in contempt, and ordered USPA, after a phase-out period, to turnover any future profits resulting from its sales of sunglasses bearing the infringing double horsemen marks.  A true and correct copy of the March 5, 2013 Order is attached hereto as Exhibit 4.

Arvind's Conduct

_____

[2]     A true and correct copy of the 2012 Injunction is attached hereto as Exhibit 3.

42.     On September 1, 2007, pursuant to Paragraph 26 of the Settlement Agreement, USPA's Master Licensee for India, Arvind, executed a Consent to Settlement Agreement, Arbitration and Incorporation ("Arvind Consent"). The Arvind Consent was signed by Jayesh K. Shah on behalf of Arvind Brands, a Division of Arvind Mills Ltd. A true and correct copy of the Arvind Consent is attached hereto as Exhibit 5. Mr. Shah was a Director and the Chief Financial Officer of Arvind at the time, and has remained in the same position since signing the Arvind Consent.

43.     The Arvind Consent states that Arvind Brands (A Division of Arvind Mills Limited) is the Master Licensee of USPA Properties in India. The Arvind Consent was also executed by USPA, USPA Properties, and Polo/Lauren Co. L.P.

44.     The Arvind Consent, among other things, provides as follows:

> Whereas, USPA Properties and PRL are parties to a Settlement Agreement, dated as of September [5], 2003 . . . in which PRL agrees, among other things, to extend *certain protections and benefits* to those licensees of USPA Properties who agree to be bound by the terms and conditions of the Settlement Agreement and to have its terms incorporated into their respective licenses with USPA Properties. (emphasis added)

> Whereas, Master Licensee desires to receive such *protections* and *benefits* of the Settlement Agreement and, by signing this Consent, expressly agrees to be bound by the terms thereof and to have the terms thereof incorporated into its Master License; (emphasis added)

> Whereas, among other things, the Settlement Agreement requires the Master Licensee's consent to the arbitration procedure set forth therein as a condition to receiving the *benefits* and *protections* of the Settlement Agreement. (emphasis added)

45.     The protections and benefits extended to Arvind under the Arvind Consent and Settlement Agreement include RLC's agreement that Arvind could use the Settlement Marks in the manner, and with the restrictions, set forth in the Settlement Agreement without reprisal from

RLC, and RLC would not contact, communicate with, or otherwise assert claims against or sue Arvind or its sublicensees, for the promotion or offering for sale, of USPA branded products bearing the Settlement Marks, except pursuant to the procedures set forth in the Settlement Agreement.

46.     In exchange for those protections and benefits, under the explicit terms of the Arvind Consent, Arvind agreed: (a) to abide and be bound by the terms of the Settlement Agreement including all of the restrictions as governed by New York law; (b) that any dispute arising from the Settlement Agreement between the parties, *inter alia,* any of its predecessors, successors, current or former parents, subsidiaries or affiliates solely by the arbitration procedures set forth therein; (c) to agree to enforcement of any such award in this Court; (d) to pay damages awarded to RLC in an arbitration as set forth in paragraph 16(I) of the Settlement Agreement; and (e) comply with any order to cease sale and/or destroy the remaining stock of any of its infringing products.

47.     Since executing and delivering the Arvind Consent, the USPA and Arvind have built a substantial and valuable business in India selling apparel and related items utilizing the Settlement Marks that but for the Arvind Consent and the protection afforded by the Settlement Agreement, the USPA Parties and Arvind would not have been able to utilize.

48.     Upon information and belief, the USPA Parties have been paid substantial royalties in connection with the sale of goods bearing the Settlement Marks in India by its licensee, Arvind or its affiliates or successor companies since as early as 2007.

49.     Defendants are also offering for sale and selling products bearing the Settlement Marks with hangtags bearing inadequate disclaimers that violate Paragraph 4(E) of the Settlement Agreement.

50.     Defendants are offering for sale and selling apparel products in which the disclaimer that such products are "Not affiliated with Polo Ralph Lauren Corp." violate the conspicuous standard required by the Settlement Agreement.  Examples of the violative disclaimers that have appeared on products sold in retail outlets throughout India are annexed hereto as Exhibit 6.

51.     In December 2012, RLC separately notified both USPA Properties and Arvind that products manufactured and sold by Arvind breached the Settlement Agreement.  A true and correct copy of these letters are attached hereto as Exhibit 7.

52.     Attorneys for the USPA Parties responded.  The responses primarily alleged that RLC's notice did not comport with the notice requirements of the Settlement Agreement. Counsel for the USPA Parties and RLC thereafter exchanged a number of letters and emails between December 2012 and March 2013, regarding RLC's claims that Arvind and the USPA Parties were engaging in behavior in India which violated the Settlement Agreement.  None of the communications from the USPA Parties' attorney alleged that Arvind was not bound by the terms of the Settlement Agreement or that any of the terms of the Settlement Agreement were void or unenforceable.  Indeed, the communications from the USPA Parties' attorney repeatedly refer to the parties' respective obligations under the Settlement Agreement.  True and correct copies of such correspondence is attached hereto as Exhibit 8.  Arvind did not send a written response to the notice it received.

53.     RLC requested a meeting to attempt to resolve the dispute as was required by the Settlement Agreement.  Representatives of the USPA Properties attended the meeting with their legal counsel, representing that they were acting for Arvind as well as the USPA Parties.  At no time during the meeting did the USPA Parties or its counsel state that Arvind was no longer a

party to the Settlement Agreement, or that any of the provisions of the Settlement Agreement were unenforceable under Indian law or otherwise.

54.     Following the meeting, USPA Properties agreed on behalf of itself and Arvind to change the violative hangtags. The USPA Parties and Arvind refused to provide RLC the information it requested regarding the number of products Arvind sold with improper hang tags or pay to RLC any of the damages specified under the Settlement Agreement on account of such violations because Defendants contended they were not obligated to do so under the Settlement Agreement.

55.     Despite the USPA Parties' assurances in January 2013 that Arvind had corrected the violations of the Settlement Agreement with respect to the hang tags, Arvind had not done so and, in fact, the products with the violative hang tags, were being sold as recently as June 30, 2013.

56.     RLC thereafter commenced an arbitration under the auspices of the ICDR against USPA and Arvind on July 31, 2013. Attached hereto as Exhibit 9 is a true and correct copy of RLC's Notice of Arbitration without annexed exhibits.

57.     For the first time, in its Answering Statement to RLC's Notice of Arbitration which the USPA Parties filed with the ICDR on August 15, 2013, the USPA Parties repudiated the terms of the Settlement Agreement by alleging that (a) damages provisions of the Settlement Agreement are "unenforceable and unconscionable," (b) "RLC lacks standing to arbitrate the claims in the Notice," and (c) "the Tribunal lacks jurisdiction to adjudicate RLC's claims." Attached hereto as Exhibit 10 are true and correct copies of the USPA Parties' Answering Statement and Arvind's Response without annexed exhibits to RLC's Notice of Arbitration.

58.     Within days of receiving notice of the arbitration, Arvind commenced the City Court Action against RLC in Bangalore, India, based upon allegations that it was not subject to the Settlement Agreement or its arbitration provisions, seeking, *inter alia,* to stay the prosecution of the arbitration, and for a declaration from the Indian city court that the Settlement Agreement is null and void, unenforceable under Indian law, and enjoining RLC from initiating further arbitration proceedings under the Settlement Agreement in India.  Attached hereto as Exhibit 11 is a true and correct copy of Arvind's complaint (styled as a "Memorandum of Plaint" in India).

59.     Despite Arvind's admission that it had signed the Arvind Consent in conjunction along with its appointment as a master licensee of USPA in 2007, Arvind, for the first time, now asserts it is not bound by the terms of the Settlement Agreement on a number of grounds, including its "demerger" in 2009, which abrogated its obligations under the Settlement Agreement, and its claim that Indian law prevents any Arvind entity from being bound by the terms of the Settlement Agreement.

60.     Some relevant portions of Arvind's Memorandum of Plaint state as follows:

> The 1st Plaintiff [Arvind] had been generally carrying on the business of marketing and sale of branded garments through its division Arvind Brands.  In 2009, the Arvind Brands business division was demerged from the 1st Plaintiff [Arvind] into Arvind Lifestyle Brands Ltd.  This was pursuant to a scheme of arrangement of demerger sanctioned by the High Court of Gujarat, India which has been produced.  From then onwards, 1st Plaintiff [Arvind] ceased to carry on business of marketing and sale of branded garments and it is 2nd Plaintiff, Arvind Lifestyle Brands Ltd., which has been carrying on such business.  As a consequence of such demerger, all contracts stood transferred in favour of 2nd Plaintiff[.]  Accordingly the License Agreement with USPA, as also the Consent Agreement, stood transferred to Arvind Lifestyle Brands Ltd., and 1st Plaintiff [Arvind] consequently got discharged from all these contracts.

\* \* \*

16

The Plaintiffs submit that the attempt of the Defendant to initiate and set in motion of arbitration of its purported claims is not permissible in law, not permitted even under the Settlement Agreement.  Such arbitration would be without jurisdiction and would also be contrary to the public policy of India and Indian laws.

* * *

It is submitted that the Settlement Agreement, in para 24, in so far as it provides for disputes of the Defendant against the 1st Plaintiff [Arvind] to be governed by New York laws, is void, unenforceable and inoperative in India.  The actions which the Claimant alleges to be aggrieved by are the sale of some USPA branded products in India.  Therefore there being no International transaction, as to whether such sales in India are in breach of any contract or any law can only be governed by Indian law.  It is not permissible for the parties to contract out of Indian law and make some other foreign law applicable especially when all the sales which are complained of are taking place within India.  Therefore the Defendant cannot claim or insist that its claims pertaining to sale of products in India must be governed by US law.  This would not be permissible under Indian law and would be opposed to the public policy of India.

61.    The long and short of Arvind's position is as follows.  Arvind admits that it executed the Arvind Consent in 2007.  It admits that it has availed itself of the benefits and protections of the Settlement Agreement by building a business on the back of the Settlement Marks.  Nonetheless, Arvind now claims, that through a purported demerger transaction, all its obligations under the Settlement Agreement are discharged.  Arvind further maintains that, in any event, the Settlement Agreement is now and always has been and is null and void and inoperative as to any of Defendants' behavior in India because certain material provisions are contrary to Indian law.

62.    By the aforesaid conduct, Arvind and the USPA Parties fraudulently induced the PRL Settlement Parties to execute the Arvind Consent, even though prior to its execution of the Arvind Consent, Arvind believed that the terms of the Settlement Agreement were invalid under Indian law and it could not be bound thereby.  Arvind then through its scheme of demerger,

purported to discharge any contractual obligations it had to the PRL Settlement Parties under the Arvind Consent without notice of any kind to RLC or the PRL Settlement Parties by Arvind or the USPA Parties.

63.    At the direction of the Indian city court on an application by Arvind, purported service of the papers in the City Court Action was made on RLC's counsel in the arbitration in Mumbai, requesting Mumbai counsel to be present on August 21, 2013.

64.    On August 21, 2013, counsel for RLC in India, who was appointed to represent RLC solely in the international arbitration before the ICDR, advised the Indian city court that it had no authority to represent RLC in the City Court Action commenced by Arvind, and requested that the court postpone any hearing on Arvind's applications to stay the ICDR arbitration until RLC was properly served under the Hague Convention and had an opportunity to consider how to proceed in the City Court Action.

65.    The Indian city court refused the request and directed a hearing on the application for a temporary restraining order on Saturday, August 24, 2013.  Counsel for RLC in the arbitration was unable to secure authorization to permit it to appear for RLC in the City Court Action between the time it received notice of the City Court Action on August 21st and the August 24th hearing date.

66.    RLC's Indian arbitration counsel attended the hearing in the City Court Action on Saturday, August 24 and advised the city court that it was unable to obtain a power of attorney from RLC to permit an appearance and again requested an adjournment of the matter.

67.    The Indian city court granted Arvind's request, and entered an interim injunction staying the arbitration.  The ICDR has stayed the arbitration against Arvind because of the entry of the injunction.

68.     The Indian order enjoining the ICDR arbitration proceeding presently remains in effect.

69.     The USPA Parties were required by the Settlement Agreement to cause all international licensees established after the execution of the Settlement Agreement to sign and deliver a consent binding the licensee to the terms of the Settlement Agreement.  They did not do so.  The alleged "demerger" in 2009 purportedly created a new master license in India, from the supposed new licensee. Upon information and belief, the USPA Parties knew at the time Arvind had purported to discharge its contractual obligations through the 2009 demerger that Arvind contended it was not bound by the Arvind Consent and Settlement Agreement.  Nevertheless, the USPA Parties neither advised RLC of the demerger nor obtained the requisite consent from any other entity to be bound to the Settlement Agreement.

## COUNT I
### Breach of Contract
*Against the USPA Parties and Arvind*

70.     RLC repeats and re-alleges paragraphs 1 through 69 as though fully set forth herein.

71.     RLC and the PRL Settlement Parties have fully performed all of their obligations under the Settlement Agreement.

72.     Defendants' foregoing conduct constitutes multiple and material breaches of the Settlement Agreement.

73.     Defendants have breached the Settlement Agreement by selling and offering for sale products with hangtags bearing disclaimers which do not comply with the requirements of the Settlement Agreement.

74.     By reason of the foregoing, RLC has been damaged and is entitled to an order directing Defendants to: (1) discontinue the promotion, sale, and/or shipment of any remaining

stock of the product or packaging bearing the insufficient disclaimer (collectively, "Unlawful Products"); and (2) destroy any remaining stock of the Unlawful Products.

75.   RLC is also entitled to recover from the USPA damages stipulated in the Settlement Agreement.

76.   RLC is also entitled to recover from Arvind damages stipulated in the Settlement Agreement.

**COUNT II**
**<u>Breach of Contract</u>**
*Against USPA Parties*

77.   RLC repeats and re-alleges paragraphs 1 through 76 as though fully set forth herein.

78.   RLC and the PRL Settlement Parties have fully performed all of their obligations under the Settlement Agreement.

79.   Under Paragraph 26 of the Settlement Agreement, USPA Properties was required to bind its master licensees, including Arvind, to the terms and conditions of the Settlement Agreement.

80.   The USPA Parties breached the Settlement Agreement by failing to require its present Indian licensee to consent to the Settlement Agreement's terms and conditions.

81.   As a result of the USPA Parties' breaches, Arvind and the USPA Parties have been free to develop a substantial and valuable business in India utilizing RLC's intellectual property, which it would not be entitled to use but for the PRL Settlement Parties' adherence to the Settlement Agreement.  Defendants have thereby taken advantage of the protections afforded under the Settlement Agreement.  The USPA Parties have benefited from Arvind's business by

virtue of royalties received from the sale of such products in India, which would not have been promoted or sold without the benefit and protection of the Settlement Agreement.

82.     By reason of the foregoing, RLC is entitled to recover from USPA Properties all damages that RLC has sustained and will sustain as a result of Arvind's failure to consent to the Settlement Agreement and from its promotion, sale, and/or shipment of goods bearing the Settlement Marks, together with attorneys' fees, costs, and expenses.

## COUNT III
### Breach of Contract
*Against Arvind*

83.     RLC repeats and re-alleges paragraphs 1 through 82 as though fully set forth herein.

84.     RLC and the PRL Settlement Parties have fully performed all of their obligations under the Settlement Agreement.

85.     Arvind consented in writing to be bound by the terms of the Settlement Agreement.

86.     Arvind has breached its obligations under the Settlement Agreement and the Arvind Consent by refusing to follow the terms of the Settlement Agreement and, indeed, has repudiated the Settlement Agreement.

87.     Specifically, Arvind has been free to develop substantial and valuable business in India utilizing RLC's intellectual property which it would not be entitled to do but for the PRL Parties' adherence to the Settlement Agreement, and Arvind's taking advantage of the benefits protections afforded by the terms of the Settlement Agreement.

88.     By reason of the foregoing, RLC is entitled to recover from Arvind all damages that RLC has sustained and will sustain from Arvind refusing to abide by the terms of the

21

Settlement Agreement, and from its promotion, sale, and/or shipment of products bearing the Settlement Marks, together with attorneys' fees, costs, and expenses.

## COUNT IV
### Fraudulent inducement
*Against USPA Parties*

89.     RLC repeats and re-alleges paragraphs 1 through 88 as though fully set forth herein.

90.     By delivering a copy of the executed consent to RLC for counter-signature by the PRL Settlement Parties in or about September 1, 2007, the USPA Parties represented to RLC that Arvind was its Indian licensee and that they had procured Arvind's signature to the Arvind Consent, thereby binding Arvind by the terms of the Settlement Agreement.

91.     At the time it delivered the executed Arvind consent to RLC for countersignature by the PRL Settlement Parties, the USPA Parties knew or should have known that Arvind contended that Indian law prevented Arvind and the USPA Parties from being bound by the terms of the Settlement Agreement with respect to their activities in India.  The USPA Parties deliberately failed to inform RLC or the PRL Settlement Parties of this material fact.

92.     The USPA Parties made these material omissions of fact and/or fraudulent misrepresentations with the intention and for the purpose of defrauding the PRL Settlement Parties and RLC, and to induce the PRL Settlement Parties' and RLC reasonable reliance on the misrepresentations and/or omissions of material fact.

93.     RLC and the PRL Settlement Parties were justified in their reliance on the USPA Parties' misrepresentations and/or omissions of material fact.

94.     RLC has been damaged by the USPA Parties' aforesaid misrepresentations and/or omissions of material fact, which was reasonably foreseeable to the USPA Parties.

95.     By reason of the foregoing, RLC has been damaged and is entitled to recover from the USPA Parties all damages that RLC has sustained and will sustain as a result of the USPA Parties' fraudulent actions, together with its attorney's fees, costs and expenses.

## COUNT V
### Fraudulent Inducement
*Against USPA Parties*

96.     RLC repeats and realleges paragraphs 1 through 95 as though fully set forth herein.

97.     The USPA Parties were aware, but deliberately failed to disclose to RLC that Arvind "demerged" into a new company in or about 2009, and that as a result, Arvind contended it was not bound by the terms of the Arvind Consent or the Settlement Agreement.

98.     The USPA Parties knew in 2009, when they failed to disclose the material fact that its master licensee had purportedly changed, that this constituted a material omission of fact because RLC and the PRL Settlement Parties would rely upon the purportedly mistaken belief that Arvind was bound by the terms of the Settlement Agreement and was therefore entitled to its benefits and protection.

99.     The USPA Parties made the material omission of fact with the intention to mislead and defraud RLC and the PRL Settlement Parties, and to continue its receipt of lucrative royalty from Arvind.

100.     RLC and the PRL Settlement Parties reasonably relied upon this material omissions of fact.

101.     RLC has been damaged by USPA Parties' omission of material fact, which was reasonably foreseeable to USPA Parties.

102.    By reason of the foregoing, RLC is entitled to recover from the USPA Parties all damages it has sustained as a result of the USPA Parties' fraudulent behavior, together with interest, and its attorneys' fees, costs and expenses.

**COUNT VI**
**Fraudulent Inducement**
*Against Arvind*

103.    RLC repeats and re-alleges paragraphs 1 through 102 as though fully set forth herein.

104.    Arvind executed the Arvind Consent ostensibly binding it to the terms of the Settlement Agreement, and sent it to the PRL Settlement Parties for countersignature on or about September 1, 2007.

105.    At the time it sent the executed consent to the PRL Settlement Parties it knew that it contended Indian law would prevent itself from being bound by the terms of the Settlement Agreement.

106.    Arvind deliberately failed to inform the PRL Settlement Parties that it believed it could not be bound by the terms of the Settlement Agreement pursuant to Indian law at the time it delivered the Arvind Consent to the PRL Settlement Parties because it intended to defraud RLC and the PRL Settlement Parties into counter-signing the Arvind Consent.

107.    In fact, Arvind's intention was to fraudulently procure the benefits and protection of the Settlement Agreement despite its belief that it could not be made to satisfy its obligations under the Settlement Agreement by virtue of Indian law.

108.    Arvind's behavior constitutes a fraudulent misrepresentation and/or material omission of fact.

109.   RLC and the PRL Settlement Parties were justified in their reliance on Arvind's misrepresentation and/or material omission of fact.

110.   RLC and, the PRL Settlement Parties were damaged by Arvind's misrepresentation and material omission of fact, which was reasonably foreseeable to Arvind.

111.   By reason of the foregoing, RLC is entitled to recover from Arvind all damages that RLC has sustained and will sustain from Arvind's fraudulent behavior, together with attorneys' fees, costs, and expenses.

**COUNT VII**
**<u>Fraudulent Inducement</u>**
*Against Arvind*

112.   RLC repeats and realleges paragraphs 1 through 111 as if fully set forth herein.

113.   Arvind was aware, but deliberately failed to disclose to RLC and the PRL Settlement Parties, that it "demerged" into a new corporate entity in or about 2009, and that as a result, it contended it was no longer a party to the Arvind Consent or the Settlement Agreement.

114.   Arvind knew when it "demerged" in 2009 that failure to disclose its belief that it was no longer bound by the Arvind Consent or the Settlement Agreement constituted a misrepresentation or omission of material fact and that RLC and the PRL Settlement Parties would rely upon he mistaken belief that Arvind remained bound by the Arvind Consent and the Settlement Agreement.  Despite this knowledge, Arvind failed to disclose this material fact to RLC or the PRL Settlement Parties.

115.   Arvind's misrepresentation and/or material omission of fact was made with the intention to defraud RLC and the PRL Settlement Parties, and to continue to engage the benefits and protection of the Settlement Agreement.

116.    RLC and the PRL Settlement Parties materially relied upon Arvind's material omission of fact.

117.    RLC and the PRL Settlement Parties have been damaged by Arvind's omission of a material fact, which was reasonably foreseeable to Arvind.

118.    By reason of the foregoing, RLC is entitled to recover from Arvind all damages it has sustained as a result of Arvind's fraudulent behavior together with interest, and its attorneys' fees, costs and expenses.

## COUNT VIII
### Unjust Enrichment
*Against USPA Parties and Arvind*

119.    RLC repeats and realleges paragraphs 1 through 118 as if fully stated herein.

120.    If the Arvind Consent and the Settlement Agreement are void and unenforceable, Defendants were enriched at RLC's expense as a result of their promotion and sale of USPA branded product bearing the Settlement Marks without objection from RLC or the PRL Settlement Parties in India, while failing to be bound by the restrictions of the Settlement Agreement.

121.    Equity and good conscience militate against Defendants' retaining the profits and other benefits it gained from their use of the Settlement Marks in India without being bound by Defendants' obligations under the Settlement Agreement.

122.    RLC has been damaged as a result of Defendants' behavior or described herein and is entitled to an award of damages from Defendants, including a disgorgement of Defendants' profits received in connection with their unjust enrichment.

## PRAYER FOR RELIEF

A.      On the First Count for relief, that the Court find, adjudge and decree that the aforesaid acts of the USPA Parties and Arvind constitute breach of contract; that RLC

recover its expectancy and other damages in an amount to be proved at trial , including recovery from the USPA Parties of an amount equal to the greater of 50% of the earned royalties or 100% of actual royalties received from the Unlawful Products in India, and recovery from Arvind of an amount equal to 25% of the net sales of Unlawful Products;

B.      On the Second Count for relief, that the Court find, adjudge and decree that the USPA Parties' aforesaid acts constitute breach of contract; that USPA Parties be enjoined from use of Settlement Marks in India; that RLC recover its expectancy and other damages from the USPA Parties in an amount to be proved at trial, including an amount equal to the greater of 50% of the earned royalties or 100% of the actual royalties the USPA Parties received from the sale of products bearing the USPA marks in India.  And that, in addition, the USPA Parties be mandatorily ordered and directed to terminate all license or distribution agreements granting Arvind, or any affiliate, subsidiary or other person under Arvind's direction or control, the right to produce, market, or sell products bearing the Settlement Marks in India;

C.      On the Third Count for relief, that the Court find, adjudge and decree that Arvind's aforesaid acts constitute breach of contract, that Arvind be enjoined from use of the Settlement Marks, and that RLC recover its expectancy and other damages from Arvind in an amount to be proved at trial, including an amount equal to 25% of the net sales of USPA Products bearing the Settlement Marks in India.

D.      On the Fourth and Fifth Counts for relief, that the Court find, adjudge and decree that the aforesaid acts of the USPA Parties constitute fraudulent inducement to contract and fraudulent concealment; that RLC recover its damages in an amount proved at trial, including, but not limited to, all of RLC's out-of-pocket costs, including legal fees and costs,

incurred in connection with the negotiations and institution of the ICC arbitration in India.  And that, in addition, RLC be awarded exemplary and punitive damages in an amount to be determined at trial.

E.      On the Sixth and Seventh Counts for relief, that the Court find, adjudge and decree that the aforesaid acts of Arvind constitute fraudulent inducement to contract and fraudulent concealment; that RLC recover its damages in an amount to be proved at trial, including, but not limited to,  all of RLC's out-of-pocket costs, including legal fees and costs, incurred in connection with the negotiations and institution of the ICC arbitration in India.  And that in addition, RLC be awarded exemplary and punitive damages from Arvind in an amount to be determined at trial.

G.      On the Eighth Count for relief, that the Court find, adjudge and decree that aforesaid acts of Arvind constitute unjust enrichment, that RLC be awarded an amount equal to and Arvind be ordered to disgorge, all profits that Arvind or any Arvind affiliate earned on the sale in India of all products bearing the Settlement Marks.

H.      On all Counts, that the USPA Parties be mandatorily ordered and directed to terminate all license or distribution agreements granting Arvind, or any affiliate, subsidiary or other person under Arvind's direction or control, the right to produce, market, or sell products bearing Settlement Marks in India;

I.      On all Counts, that the Court retain jurisdiction for the purpose of enabling Plaintiff to apply to the Court at any time for such further orders and directions as may be necessary or modification of any such orders, for the enforcement of complaints therewith and the punishment of any violations thereof.

J.      That Plaintiff be awarded the cost of the suit, including reasonable attorney's fees, and interest; and

K.      That the Court order such other further and different relief as the Court may deem just and proper.


DATED:   New York, New York          Respectfully submitted,
         October 8, 2013
                                     KELLEY DRYE & WARREN LLP


                                     By: _____
                                         John M. Callagy
                                         William R. Golden, Jr.
                                         Andrea L. Calvaruso
                                         101 Park Avenue
                                         New York, New York
                                         Tel: (212) 808-7800

                                     *Attorneys for Plaintiff*
                                     *Ralph Lauren Corporation*