UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Ralph Lauren Corporation, PRL USA Holdings, Inc., and Polo/Lauren Company, L.P.<br>　　　　　　　　Plaintiffs,<br><br>　　　　v.<br><br>United States Polo Association, Inc., USPA Properties Inc., and Arvind Ltd.,<br>　　　　　　　　Defendants. | 13 Civ. 7147<br><br>**OPINION** |

　　　　Plaintiffs Ralph Lauren Corporation ("RLC") and its subsidiaries, PRL USA Holdings, Inc. ("PRL") and Polo/Lauren Company, L.P. ("PLC"), (collectively "the Polo plaintiffs") bring this action alleging breach of contract, fraudulent inducement, and unjust enrichment.  Presently, there are two motions before the court: (1) defendants United States Polo Association, Inc. and USPA Properties, Inc. (collectively "USPA") have filed a motion to compel arbitration pursuant to 9 U.S.C. § 3 of the Federal Arbitration Act ("FAA") and to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative, to stay proceedings pending arbitration, and (2) defendant Arvind Ltd. ("Arvind Limited") has also filed a motion requesting the same relief.

　　　　For the following reasons, the court compels arbitration and dismisses the complaint.

**Facts**

In a motion to compel arbitration, the court applies a summary judgment standard that is not limited to the face of the pleadings, unlike a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Ramasamy v. Essar Global Ltd., No. 11-cv-3912 (JSR), 2012 WL 1681763, at *1 (S.D.N.Y. May 8, 2102) (citing Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003)).  Accordingly, the following facts are drawn from the pleadings as well as the attachments to the pleadings.

RLC is a retail business that is built around the Polo mark brand—an image of a single polo player on his horse.  RLC and its wholly owned subsidiaries, including PRL and PLC, have used the RLC marks in connection with the promotion, advertising, and sale of a variety of goods and services throughout the world.  RLC and its subsidiaries own trademark registrations for RLC marks in the United States and around the world.

Defendant USPA has been the governing body of the sport of polo in the United States since 1890 and owns a large portfolio of valuable trademarks related to the sport.  USPA funds its activities, in part, through its international licensing program, pursuant to which the USPA trademarks are licensed for use on apparel and other goods.

RLC and the USPA have been involved in trademark litigation since 1984.  The litigation has taken place in the Southern District of New York.  In 2003, RLC's subsidiaries PRL and PLC executed a Settlement Agreement with

the USPA.  The Settlement Agreement intended to resolve disputes regarding the use by the USPA of certain names, logos, and trademarks in connection with the production and sale of apparel (the "Settlement Marks").  The Settlement Agreement is governed by New York law and binds the parties to the ongoing jurisdiction of the Southern District of New York.  The Settlement Agreement also binds USPA's licensees in different international locations.

In particular, the Settlement Agreement permits the use of Settlement Marks on apparel and other specified categories provided that (1) the USPA and its licensees always display a prominent disclaimer, or hangtag, on goods showing the settlement marks that states "Not Affiliated with Polo Ralph Lauren Corp." and (2) the USPA and its licensees adhere to all other restrictions specified in the Settlement Agreement with respect to the manner in which such goods showing the Settlement Marks are promoted, advertised, and sold.

The Settlement Agreement also sets out a broad arbitration provision for resolving disputes arising between the parties:

> [T]he parties agree that the sole remedy for any dispute, action, aim, or controversy of any kind hereafter arising between PRL on the one hand and any of the USPA Parties on the other hand (including any predecessors, successors, current or former parents, subsidiaries, affiliates, divisions, officers, directors, partners, retailers, licensees, sublicensees, employees, agents, assignees or any other person or entity acting on their behalf) in any way arising out of, pertaining to, or in connection with this Settlement Agreement (including, but not limited to, any claims for breach of this Settlement Agreement, claims that the party's trademark and/or trade dress rights have been infringed, and/or

claims for federal or state unfair competition and/or dilution that fall within the Settlement Agreement) shall be resolved by arbitration….

Moreover, the Settlement Agreement also provides that the arbitration will be administered by the American Arbitration Association's International Centre for Dispute Resolution (ICDR) and that the arbitration is to take place before three judges in the city which is the principal place of business of the USPA licensee or sublicensee.

***USPA and its Indian Licensee Arvind Limited***

On September 1, 2007, Arvind Brands, a division of Arvind Limited, entered into a license agreement with USPA that permitted Arvind Brands to use the USPA marks, or the Settlement Marks, on apparel and other products in India.  In accordance with the license agreement, Arvind Brands executed a Consent to the Settlement Agreement ("Consent Agreement"), thereby binding itself to the terms of the Settlement Agreement.  Under the Consent Agreement, Arvind Brands could use the Settlement Marks in the manner, and with the restrictions, set forth in the Settlement Agreement.  In exchange for its ability to use the Settlement Marks, Arvind Limited agreed to, among other things, (a) abide by the terms of the Settlement Agreement, (b) resolve any dispute arising from the Consent Agreement by arbitration, and (c) accept the enforcement of such an arbitration award by a court in the Southern District of New York.  Since executing the Consent Agreement, Arvind Limited and the USPA have built a substantial and valuable business in India selling apparel and related items utilizing the Settlement Marks.

In 2009, Arvind Limited spun off, or demerged, its Arvind Brands division into a subsidiary named Arvind Lifestyle Brands Limited ("ALBL"). Pursuant to Indian law, under this demerger process all of the Arvind Brands division's liabilities and duties were transferred to and became the liabilities and duties of ALBL. ALBL thus assumed Arvind Limited's obligations under the License and Settlement Agreement and Arvind Limited was discharged of those obligations.

It appears from the pleadings that neither RLC, nor its subsidiaries knew of this demerger.

***RLC's Indian Arbitration***

In December 2012, RLC separately notified both USPA and Arvind Limited that products manufactured and sold by Arvind had hangtags that violated RLC's trademarks and rights under the Settlement Agreement. RLC alleged that defendants (1) Arvind Limited and USPA were selling apparel products in India with hangtags bearing a photo of a single polo player, which RLC claimed was a trademark that infringed PLC's trademark registration rights, and (2) that Arvind Limited breached the Settlement Agreement based on apparel product hangtags with allegedly insufficient disclaimers of affiliation between USPA and RLC.

On July 31, 2013, RLC initiated arbitration proceedings against defendants—USPA and Arvind Limited—in the location where the USPA's foreign licensee had its primary place of business— Bangalore, India. RLC was

5

the sole claimant in the arbitration—it did not include its subsidiaries, PLC and PRL.  Along these lines, RLC did not name ALBL as a defendant—it only named Arvind Limited and USPA.

On August 12, 2013, Arvind Limited and ALBL filed suit against RLC in a city court in Bangalore, India.  Arvind Limited filed suit to address various threshold arbitration issues and to confirm ALBL's, as opposed to Arvind Limited's, obligation to abide by the terms of the Settlement Agreement and to participate in arbitration.  In particular, Arvind Limited argued that RLC could not enforce its subsidiaries' rights under the Settlement Agreement.

On August 27, 2013, the Bangalore court entered an interim injunction order based on its finding that Arvind Limited and ALBL had made a prima facie showing that RLC was not the proper party to initiate suit under the Settlement Agreement.  The interim order was to be in effect for a few days until RLC filed its objections.  RLC did not respond to the court, withdrew from participation in the arbitration proceedings, and filed the lawsuit presently before this court.  The ICDR subsequently stayed the arbitration proceedings.

On October 25, 2013, Arvind Limited and ALBL voluntarily dismissed their lawsuit in the Bangalore court.

*The Present Litigation*

RLC filed its complaint against defendants on October 9, 2013.  On December 9, 2013, the USPA and Arvind Limited moved to dismiss the original

6

complaint, asserting, among other things, that RLC was not a proper party to the litigation because it had not signed the Settlement Agreement. On December 30, 2013, RLC filed an amended complaint naming the Ralph Lauren subsidiaries that had signed the Settlement Agreement, PRL and PLC.

Collectively, the Polo plaintiffs allege that they are the "target of a fraudulently-conceived international shell game perpetrated by the USPA Parties and Arvind." They have asserted eight claims against defendants USPA and Arvind ("USPA/Arvind").

The Polo plaintiffs have asserted three breach of contract claims, alleging that defendants failed to comply with the terms of the Settlement Agreement and more specifically, that USPA/Arvind sold and offered for sale products that infringed upon protected trademarks and that had hangtags bearing disclaimers that did not comply with the requirements set forth in the Settlement Agreement. The Polo plaintiffs have also set forth four fraudulent inducement claims alleging that USPA/Arvind misrepresented (1) that Arvind Limited would be bound by the Settlement Agreement and (2) that Arvind Limited had in fact demerged into a new corporate entity in 2009. Finally, the Polo plaintiffs have set forth a claim for unjust enrichment.

*Post-Complaint Correspondence*

On October 29, 2013, USPA's counsel sent a letter to RLC on behalf of USPA, Arvind Limited, and ALBL. Counsel represented the following points: (1) ALBL had assumed Arvind Limited's rights and obligations under the License

7

and Settlement Agreement, and remains bound by those agreements, including the arbitration provision of the Settlement Agreement, (2) Arvind Limited and ALBL voluntarily dismissed their civil action in Bangalore, India, and (3) going forward, the USPA and ALBL agree to raise any jurisdictional contentions and affirmative defenses within the arbitration proceedings, rather than in an Indian court.  In short, USPA, Arivnd, and ALBL have represented their desire to resolve this dispute by arbitration in India.

On October 30, 2013 counsel for RLC responded to defendants and restated their commitment to pursuing the instant litigation.

**Discussion**

The FAA, 9 § U.S.C. 1 et seq., "creates a body of federal substantive law… applicable to arbitration agreements, such as the one at issue here, affecting interstate commerce." Alliance Bernstein Investment Research & Management, Inc. v. Schaffran, 445 F.3d 121, 125 (2d Cir. 2006).  "The FAA embodies 'a liberal federal policy favoring arbitration agreements.'" LG Electronics, Inc. v. Wi-Lan USA, Inc., No. 13-cv-2237 (RA), 2014 WL 3610796, at *2 (S.D.N.Y. Jul. 21, 2014)(quoting Moses H. Cone Memorial Hospital v. Mercury Construction Corporation, 460 U.S. 1, 24 (1983)).  Along these lines, the Supreme Court has held that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Id. at 24-25.  This "policy is even stronger in the context of international business transactions where arbitral agreements promote the smooth flow of international transactions by removing the threats

8

and uncertainty of time-consuming and expensive litigation." Republic of Ecuador v. Chevron Corporation, 638 F.3d 384, 393 (2d Cir. 2011).

The party opposing arbitration bears the burden of proving that the claims at issue should not be resolved via arbitration. Green Tree Financial Corporation-Alabama v. Randolph, 531 U.S. 79, 91 (2000). Accordingly, here, the Polo plaintiffs, who oppose defendants' motion to compel arbitration, must overcome the presumption that this case should be resolved by an arbitrator.

**Waiver of the Right to Arbitrate**

The Polo plaintiffs contend that USPA/Arvind waived their right to enforce the arbitration clause by filing a lawsuit in Bangalore, India. The Polo plaintiffs argue that it is proper for this court to determine the question of waiver. In response, USPA/Arvind contend that they have not waived their right to arbitrate and that is for the arbitrator, not this court, to decide the issue of waiver.

For the reasons set forth below, this court decides the issue of whether USPA/Arvind waived their right to arbitrate and the court finds that they have not waived such right.

*(a) Deciding the issue of waiver*

The first issue for the court to consider is whether it or the arbitrator should decide the issue of waiver. The Second Circuit has held that "where the waiver defense [is] based on prior litigation by the party seeking arbitration…

9

the court should decide the issue of waiver." Doctor's Associates, Inc. v. Distajo, 66 F.3d 438, 456 (2d Cir. 1995). "Traditionally, courts, not arbitrators, have decided claims of waiver of the right to arbitrate based on participation in protracted litigation." LG Electronics, Inc., 2014 WL 3610796, at *3; Apple & Eve, LLC v. Yantai North Andre Juice Co., Ltd., 610 F.Supp.2d 226, 230-231 (E.D.N.Y. Apr. 27, 2009). Moreover, there are policy reasons for the court to decide whether a party has waived its right to arbitration through prior litigation—namely, the district court has the inherent power to control its own docket and to prevent abuse in its proceedings, such as forum shopping. LG Electronics, Inc., 2014 WL 3610796, at *3.

Here, the court finds that it, and not the arbitrator, should decide the issue of waiver. The Polo plaintiffs have raised the defense of waiver based upon USPA/Arivnd's decision to begin litigation in India after the Polo plaintiffs initiated arbitration proceedings. Per the Second's Circuit's reasoning in Doctor's Associates, in cases such as the one presently before the court, "where the waiver defense [is] based on prior litigation by the party seeking arbitration," the district court should decide the question of waiver. 66 F.3d at 456; see also, LG Electronics, Inc., 2014 WL 3610796, at *3

### (b) Whether USPA/Arvind have waived their right to arbitration

The Second Circuit has set forth a three-part test for determining the waiver question: "(1) the time elapsed from the commencement of litigation to the request for arbitration, (2) the amount of litigation (including any

substantive motions and discovery), and (3) proof of prejudice." PPG Industries, Inc. v. Webster Auto Parts, Inc., 128 F.3d 103, 107 (2d Cir. 1997).

"The key to waiver analysis is prejudice." Thyssen, Inc. v. Calypso Shipping Corporation, S.A., 310 F.3d 102, 105 (2d Cir. 2002) (per curiam).  The Second Circuit has recognized two types of prejudice: substantive prejudice and prejudice due to excessive cost and time delay.  Louisiana Stadium & Exposition District v. Merrill Lynch, Pierce Fenner & Smith Inc., 626 F.3d 156, 159 (2d Cir. 2010).  Substantive prejudice takes place "when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration." Thyssen, 310 F.3d at 105.  The second type of prejudice—time and expense—takes place "when a party too long postpones his invocation of his contractual right to arbitration and thereby causes his adversary to incur unnecessary delay and expense." Id.

Here, the Polo plaintiffs have failed to demonstrate substantive prejudice.  USPA/Arvind are not attempting to relitigate any issue by invoking arbitration.  There have not been any dispositive motions in either the Indian litigation or in the litigation before this court.  Rather, in moving this court to compel arbitration, USPA/Arvind have requested that the court return the parties to arbitration in India.  It was the Polo plaintiffs, not USPA/Arvind, that filed the present action in the Southern District of New York and that postponed the arbitration proceedings in India.

Additionally, the Polo plaintiffs have also failed to demonstrate prejudice due to excessive delay and expense. USPA/Arvind moved to compel arbitration as soon as RLC withdrew from the Indian arbitration and filed the instant litigation. Thus, there has been no delay on the part of USPA/Arvind and any expense incurred by the Polo plaintiffs was brought about as a direct result of their attempt to locate the litigation in this court.

Accordingly, as the Polo plaintiffs have failed to demonstrate prejudice, the court finds that USPA/Arvind have not waived their right to arbitration. The court grants USPA/Arvind's motion to compel arbitration.

**The Polo Plaintiffs' Fraudulent Inducement Claims**

Finally, the Polo plaintiffs allege that even if the court decides to compel arbitration, the court should still consider the Polo plaintiffs' fraudulent inducement claims, because these claims go to the validity of the agreement to arbitrate between the parties.

The Supreme Court has explained that there are two types of validity challenges under § 2 of the FAA: one type challenges specifically the validity of agreement to arbitrate, and the other challenges the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid. Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 70 (2010). The Supreme Court has held that courts should only decide the first challenge—that is, specific challenges to the

validity of the arbitration agreement.  Id.   On the other hand, "[a] challenge to the validity of the contract as a whole, and specifically to the arbitration clause, must go to the arbitrator."  Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 449 (2006).  The Supreme Court has explained that even "where the alleged fraud that induced the whole contract equally induced the agreement to arbitrate which was part of that contract—we nonetheless require the basis of challenge to be directed specifically to the agreement to arbitrate before the court will intervene."  Rent-A-Center, West, Inc., 561 U.S. at 71.

In its complaint, the Polo plaintiffs have set forth four claims of fraudulent inducement that only allege generalized challenges to the formation of the Settlement Agreement as well as to the subsequent Consent Agreement that bound Arvind Limited, and in turn ALBL, to the terms of the Settlement Agreement.  The Polo plaintiffs' have alleged that USPA/Arvind fraudulently induced their decision to sign both the Settlement Agreement and the subsequent Arvind Consent Agreement by misrepresenting that (1) Arvind Limited would be bound by the Settlement Agreement and (2) that Arvind Limited had in fact demerged into a new corporate entity.  Accordingly, as these claims only go the formation of the contract as a whole, and not to the agreement to arbitrate, the arbitrator should decide the Polo plaintiffs' fraudulent inducement claims.  See Buckeye Check Cashing, Inc., 546 U.S. at 449.

## Conclusion

The court grants USPA/Arvind's motion to compel arbitration and dismisses the Polo plaintiffs' complaint. This opinion resolves item numbers 32 and 36 on the docket.

SO ORDERED.

Dated: New York, New York
       September 4, 2014

_____
Thomas P. Griesa
United States District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/4/14